UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

C.D.S. (XXX-XX-4934)  　　　　　　　　CIVIL ACTION NO. 14-cv-3324

VERSUS  　　　　　　　　　　　　　　JUDGE HICKS

U. S. COMMISSIONER SOCIAL  　　　　MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

C.D.S. ("Plaintiff") was born in 1975 and has a high school education. She has past work experience that includes being a school cafeteria worker. She fell at work in 2009 and hurt her back. Plaintiff applied for disability benefits in 2012 based on alleged back pain and mental health limitations.

ALJ Mary Abbondondelo conducted a hearing and issued a written decision that denied the claim. The Appeals Council denied a request for review, which made the ALJ's decision the Commissioner's final decision. Plaintiff filed this action to seek the limited judicial review that is available under 42 U.S.C. § 405(g).

Plaintiff lists eight issues on appeal, but they can be grouped as (1) the ALJ improperly discounted reports from her treating physicians, (2) the ALJ improperly discounted a mental evaluation, and (3) the ALJ should have found that Plaintiff suffered from several limitations that would affect her ability to attend and get through a workday. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Standard of Review; Substantial Evidence**

The court's standard of review is very deferential to the Commissioner's decision. limited. The court asks only (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Physician Opinions**

Plaintiff testified at the hearing that she worked in the cafeteria of a local school for five years. She also worked a second job at a bread store for two of those years. She had a number of other jobs in earlier years. Plaintiff said she fell at her cafeteria job and hurt her back. She made two or three attempts to return to work, but she could not do so.

The medical records show that Plaintiff reported to LSU-HSC in October 2011 as a new patient in the pain management clinic. She was then 36 and had a chief complaint of lower back pain with right leg radiculopathy since 2009. An MRI from prior treatment at the Louisiana Spine Institute revealed L4-5 small annular tear extending into the right foramen, as well as the L5-S1 sub facet joint arthropathy with mild stenosis on the right. A discogram

indicated a potential source of pain at L3-4. A physical examination indicated a normal range of motion and 5/5 strength in the upper and lower extremities. Her straight-leg raises were negative for radiculopathy, but she had some tenderness of the right hip and significant pain with right lumbar facet loading. She had a slight limp when walking, but her gait was otherwise steady. Medications were adjusted, and treatment options were discussed. Plaintiff stated that she did not want surgery because of the risks and the recuperation period. Tr. 267-70. Other records from LSU from 2012 indicate that Plaintiff continued to complain of pain in the lower back with radiation into her leg. Plaintiff reported her pain was aggravated by walking or sitting for long periods. Injections did not help. Tr. 261-66.

Plaintiff was also treated by Dr. Milan Mody, who specializes in neck and back surgery. He first saw Plaintiff in the summer of 2010 after she hurt her back at work. Plaintiff expressed concern about returning to work in the fall. The records indicate that Plaintiff tried physical therapy and injections, with no significant change. She expressed pain when standing straight and had difficulty walking straight. Dr. Mody noted at a March 2012 visit that he did not recommend surgery because of Plaintiff's young age and discogram findings. Tr. 241-57.

Plaintiff states that Dr. Austin Gleason at the Spine Institute had stated that she is totally incapacitated. Plaintiff does not point to any treatment records from Dr. Gleason or specific findings made by him with respect to her physical limitations. She points only to a couple of "return to work reports" that ask the physician to check boxes to indicate whether

it is recommended the patient return to work with no limitations, with indications as limited, or part-time. Dr. Gleason checked the final box on each form for "patient is totally incapacitated at this time." He wrote that the diagnosis was back and right leg pain. He did not complete any of the portions of the form that ask for specific capabilities with regard to stand/walk, sit, drive, or other physical activities. Tr. 231-34. Plaintiff also submitted a similar form signed by Dr. Mody dated March 2012. Tr. 238.

Dr. James Zum Brunnen, an orthopedic physician, conducted a consultative examination of Plaintiff in October 2012. He reviewed the MRI and the records from Dr. Mody. He also conducted an examination of Plaintiff. He wrote in his report (Tr. 338-39) that Plaintiff "barely moves around" and "essentially withdrew" from some of his efforts to examine her. He was able to determine that her cervical spine range of motion was normal, and straight-leg raise tests were negative. On review of the MRI, he noted that there were "some changes, but not a large extruded disc or anything of major significance." The lack of improvement with epidural injections or any kind of treatment was "extremely unusual in my experience," and Plaintiff's response to the examination was "out of proportion to what an experienced examiner would expect from an injury that was so long ago and lacking any truly objective findings of significant pathology."

Dr. Zum Brunnen opined that Plaintiff had "some residuals from a musculoligamentous strain of the lumbar spine." He recommended light work, with a 20-pound lifting restriction and avoidance of repetitive stooping, bending, or twisting. He added

that Plaintiff should have some alternate positions during the course of her workday, such as some standing, some walking, and some sitting.

Plaintiff complains that the ALJ improperly discounted statements of Dr. Gleason and Dr. Mody that Plaintiff could not work. Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). But the treating physician's opinions are not conclusive. When good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Id., citing Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Greenspan, 38 F.3d at 237.

The ALJ reviewed the medical evidence and the testimony. She found that the medical records did not provide a basis to support the level of severity as alleged by Plaintiff. She pointed to the lack of objective evidence of loss of range of motion in any extremity, loss of use of legs, muscle atrophy, the need for an assistive device, or other indication of limitations as serious as claimed by Plaintiff. The ALJ also pointed to Dr. Zum Brunnen's comments about the MRI not indicating significant findings. She afforded his opinion great

weight, noting that it gave adequate consideration to the subjective complaints but noted the lack of significant findings on physical examinations or imaging studies. She afforded Dr. Mody's opinion little weight, explaining that Plaintiff's subjective complaints to him were not fully supported by the objective findings. That appears to be a fairly accurate assessment.

The ALJ was presented with competing indications from the medical records, including apparent disagreement over the interpretation of an MRI. She set forth plausible reasons for her reasonable, albeit debatable, decision to afford more weight to the opinion of Dr. Zum Brunnen. The record and her decision set forth good cause for her assessment of the competing evidence.

Plaintiff complains that the ALJ did not specifically address Dr. Gleason's indication that Plaintiff was "totally incapacitated at this time," or the similar forms completed by Dr. Mody. The lack of a specific discussion of those forms does not warrant reversal because a mere statement or conclusion by a treating physician that a claimant "is disabled" or "cannot work" does not mean that the claimant is disabled for purposes of the Social Security Act; that legal conclusion is for the Commissioner to make. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). What is important is the physician's medical findings and opinions about the claimant's health problems, particularly if supported by objective evidence, and the particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law. The ALJ performed her duty in this case. Reasonable minds could differ as to how she

weighed the competing evidence, but her assessment was a reasonable one, and it was supported by substantial evidence.

**Mental Limitations**

There is no indication that Plaintiff received any significant treatment for mental health problems, but the Agency scheduled a consultative examination by a psychologist. Thomas Staats, Ph.D interviewed Plaintiff and noted that she "displayed a lot of pain behavior and moaning during the examination." She complained of sadness, fatigue, and excessive worry, and she also demonstrated "over dramatic pain behavior." Plaintiff complained of auditory hallucinations in the form of hearing mumbling voices a few days a week. She showed "severe somatic fixation" and was evasive in some answers. Tr. 329-30.

Plaintiff performed poorly on various tests, but there were indications that she was exaggerating. For example, on memory testing she was unable to recall *any* digits stated to her. Dr. Staats judged her effort to be "questionable;" he stated that her short-term memory was "impaired, but suspicious." He made a similar observation that her performance with respect to intermediate memory "appeared very suspect." Plaintiff claimed that she could not even remember three items for immediate recall. Dr. Staats, based on questions of Plaintiff, assessed that she had poor judgment, poor attention and concentration, poor persistence, and borderline intellectual functioning. His summary was that her "performance on all of the cognitive tasks was quite suspicious on this date, particularly the digit-span procedure." He described her performance on that test as "ridiculous and highly suggestive of malingering."

Plaintiff had portrayed herself as being unable to recall even the simplest things, and she appeared sullen, irritable, and passive-aggressive. Dr. Staats deemed his finding of poor concentration, memory, and the like to be "highly suspicious." Tr. 331-32.

Dr. Staats concluded that, based on Plaintiff's "portrayed mental status," she would likely not be able to follow simple instructions and work routines, or carry out three-step instructions or procedures. "As portrayed," she would have severe problems handling complex instructions. The remainder of his report contained similar precautions. Tr. 333.

The ALJ reviewed Dr. Staats' report. She afforded his final opinion little weight, saying that it was not consistent with the claimant's demonstrated activities of daily living. (Plaintiff had testified and told examiners that she is able to take care of some of her household needs— such as dressing herself, using a microwave to heat food, and driving short distances— although she said she often needs help.) The ALJ also pointed to Dr. Staats' indications of exaggerations and suspicious performance. In light of the strong indications of exaggeration, and the lack of any mental health treatment that would suggest a person who hears voices several times a week and can't recall a simple list of items or numbers, the ALJ did not err in this regard. She did not totally discount Plaintiff's mental limitations, which is reflected in the RFC's requirement that jobs be limited to those that require no more than three to four-step tasks. No greater mental limitations are mandated by this record.

**Other Limitations**

Plaintiff complains that the ALJ should have recognized that she (1) has to lie down six of every eight hours, (2) would miss work an average of two or more days per month, (3) would take too many work breaks to perform a job, and (4) would be off-task too much of the workday. Some of these alleged limitations are based on Plaintiff's testimony that she could sit or stand for only 15 to 20 minutes at a time, walk for only about 10 minutes at a slow pace, and would have to lie down for about 5.5 hours out of an 8-hour workday. Tr. 36-42. Plaintiff argues that the ALJ was essentially mandated to accept her testimony about these extreme limitations.

An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on her first-hand observation of the claimant, are particularly within her province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ was well within her discretion to reject these extreme limitations, given the lack of supporting objective medical evidence and Dr. Zum Brunnen's opinions.

The VE, when asked by Plaintiff's counsel, testified that a person who was absent more than two days a month or required extra breaks would not be able to maintain any job. Plaintiff argues that she is so limited, but she does not point to any testimony or other particular evidence to support her claims. She merely states in her brief that it is "clear"

given her back pain and other symptoms she would have such limitations. Given the lack of supporting evidence, the ALJ did not err in not recognizing these limitations.

Finally, Plaintiff argues that she would be off-task too much of the workday. She bases this solely on a statement in Dr. Staats' report that she would have poor persistence and slow pace. The VE testified that a person who was off-task 15 percent or more of the day would not be able to hold a job. The ALJ properly discounted Dr. Staats' report for the reasons stated above. Given the absence of credible and objective evidence, the ALJ was not required to recognize the persistence and pace limitations. Plaintiff is not entitled to relief with respect to this final issue.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be affirmed and that Plaintiff's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of February, 2016.

Mark L. Hornsby
U.S. Magistrate Judge